**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------X
VICKIE ZHONG,

                Plaintiff,

        -against-

ZIJUN MO, NEW FORTUNE TRAVEL
& TRANSPORTATION INC., J&S
TRANSPORTATION (NY) INC., BEI
MENG FU, JOHNNY WANG, and GE
XIAO MAO,

                Defendants.
----------------------------------------------------X

**NOT FOR PUBLICATION**

**FINDINGS OF FACT &**
**CONCLUSIONS OF LAW**

10-CV-0806 (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

       Plaintiff Vickie Zhong ("Zhong" or "Plaintiff") brought this action against Zijun Mo

("Mo"), New Fortune Travel & Transportation Inc. ("New Fortune"), J&S Transportation (NY)

Inc. ("J&S"), Bei Meng Fu ("Fu"), Johnny Wang ("Wang"), and Ge Xiao Mao ("Mao")

(collectively, "Defendants") to recover unpaid wages, overtime compensation, and a spread of

hours premium pursuant to the Fair Labor Standards Act of 1938 ("the FLSA"), 29 U.S.C. § 201

*et seq.*; New York Labor Law ("the NYLL"), N.Y. LAB. LAW § 190 *et seq.*; and New York

Codes, Rules and Regulations, N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.1 *et seq.*  Zhong

alleges that she worked as a tour guide on Defendants' bus tours to the Tropicana Casino

("Tropicana") in Atlantic City, but she was only paid $40 a day for work days of twelve hours or

more, five days a week.  Defendants dispute Zhong's claims, asserting that she was an

independent contractor who only worked one hour per day selling tickets for their bus trips to the

Tropicana.

The Court held a one day bench trial on April 24, 2012.  Two witnesses testified, Zhong and Wang.  In general, the Court finds Zhong's testimony to be credible, while Wang was hostile and very defensive.  The Court makes the following findings of fact and conclusions of law.  *See* FED.R.CIV.P. 52(a)(1).

## FINDINGS OF FACT

1.  Wang hired Zhong to work for New Fortune.  (Tr.[1] 35, 40.)

2.  Zhong worked for New Fortune from April 3, 2009 to October 26, 2009.  (Tr. 12, 55.)

3.  Zhong sold bus tickets for New Fortune's trips to the Tropicana.  (Tr. 77.)

4.  Zhong's position did not require any special skills.  (Tr. 32-33, 79.)

5.  If Zhong was unable to work on a particular day, she had to call Wang, or anyone in New Fortune's office, to indicate that she was not coming to work that day.  (Tr. 65.)

6.  Zhong worked five days a week, from Monday to Friday.  (Tr. 22-23.)

7.  Zhong worked two different shifts: approximately 6:30 p.m. to 6 or 6:30 a.m. for about three months, and approximately 12 noon to 1:45 a.m. thereafter.  (Tr. 31-32.)

8.  Zhong was actively engaged in working for New Fortune and Wang eight hours a day, as follows:

    a.  Zhong sold bus tickets one hour before the bus departed the Elmhurst,[2] Queens bus stop for the Brooklyn bus stop.  (Tr. 13.)

---

[1] "Tr." refers to the trial transcript.

[2] There are several instances in the trial transcript where the Queens bus stop is mistakenly referred to as being located in Amherst.

2

b.      Zhong rode the bus from Queens to Brooklyn, which could take up to one hour.
        (*Id.*)

c.      Zhong assisted patrons while riding the bus from Brooklyn to Atlantic City, which
        took approximately two hours.  (Tr. 13, 20-21.)

d.      Zhong spent approximately one hour assisting the bus patrons and showing them
        around the Tropicana once they arrived in Atlantic City.  (Tr. 13-14, 20.)

e.      Zhong assisted patrons while riding the bus back from Atlantic City to Brooklyn,
        which took approximately two hours.  (Tr. 14, 20-21.)

f.      Zhong rode the bus from the Brooklyn bus stop to the Elmhurst, Queens bus stop,
        which took approximately one hour.  (Tr. 14.)

9.      Zhong was not obligated to assist New Fortune's patrons at the Tropicana, beyond the
        first hour after arrival.  (*See* Tr. 57-58.)  Thereafter, Zhong was free to spend her time in
        Atlantic City for her own benefit, gambling, shopping, or engaging in other personal
        activities, until she had to board the bus for the return trip to New York.  (Tr. 58, 64.)

11.     Zhong was paid $40 a day for her work.  (Tr. 35, 55-56.)

12.     Zhong also received tips and a $22 voucher card to spend at the Tropicana. (Tr. 33-34,
        50, 56.)

## CONCLUSIONS OF LAW[3]

### I.   Zhong Was an Employee, Not an Independent Contractor

Under the FLSA, an "employee" is "any individual employed by an employer," and to "employ" means "to suffer or permit to work."  29 U.S.C. §§ 203(e)(1), (g).  Likewise, under the NYLL, an "employee" "includes any individual employed or permitted to work by an employer in any occupation."  N.Y. LAB. LAW § 651(5).  The economic reality test must be applied to determine whether a person is an employee or an independent contractor.  *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988).  The economic reality test's factors are:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Id.* at 1058-59 (citing *United States v. Silk*, 331 U.S. 704 (1947)).  "No one of these factors is dispositive; rather, the test is based on a totality of the circumstances.  The ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves."  *Id.* at 1059 (citations omitted).  Moreover, "an employer's self-serving label of workers as independent contractors is not controlling."  *Id.* (citations omitted).  Based on the facts, Zhong was an employee, not an independent contractor.

The first factor militates toward finding that Zhong was an employee.  New Fortune exercised control over Zhong.  Zhong testified that New Fortune set her work schedule and that

---

[3] A full recitation of the legal requirements of the FLSA and NYLL is unwarranted. These Conclusions of Law are provided only for those issues which were disputed at trial.

she needed company approval to change her schedule.  (Tr. 29-32.)  Additionally, New Fortune instructed Zhong to fill out a daily report as part of her duties.  (Tr. 24, 65; Pl. Exh. 2.)[4]  Wang also testified that if Zhong could not work on a particular day, she had to call Wang or the office to notify the company of her absence.  (Tr. 64-65.)  Furthermore, Ms. Yao, on behalf of New Fortune, provided Zhong with a list of rules and regulations by which she was to abide while working for New Fortune (Tr. 14-19; Pl. Exh. 1); the fact that New Fortune expected Zhong to comply with these rules shows their further exercise of control over her.

The second factor also favors a finding that Zhong was an employee.  Zhong did not have the opportunity for profit and loss through New Fortune nor did she invest in the business.  Zhong sold tickets and assisted patrons solely for New Fortune's benefit.  *See Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 325 (S.D.N.Y. 2001) (finding an individual to be an employee under the second factor of the economic reality test where the individual performed an act "at the request of and for the sole purpose of serving the Company").  New Fortune did not set up a scheme in which Zhong would share in New Fortune's profits and losses based on the number of bus tickets she sold; she only received her $40 compensation per day for her work.  (Tr. 35, 55-56.)  *See id.* (weighing that an individual who did not receive a profit other than his hourly compensation in favor of finding that he was an employee under the FLSA and the NYLL).  Her job of selling tickets ands assisting patrons did not require her to make any financial investment in New Fortune.  Further, because Zhong worked for New Fortune full time[5] (Tr. 22-23, 31-32),

---

[4] "Pl. Exh." refers to Plaintiff's Exhibits from the trial.

[5] In addition to working Monday through Friday on the bus tours, Zhong also sold tickets for New Fortune on the weekends; although, Wang disputes that Zhong sold tickets every weekend.  (Tr. 34, 97-98.)  Zhong did receive separate compensation for her weekend work (Tr.

she did not have the time or ability to work elsewhere.  *See id.* ("Indeed, the Company's demands on plaintiff's time essentially precluded him from seeking outside revenue.").

The third factor weighs in favor of finding that Zhong was an employee as well.  Her job did not require any special skills.  It only required having a good attitude and manner while serving people.  (Tr. 32-33, 79.)

The nature of Zhong's working relationship with New Fortune also suggests that Zhong was an employee under the economic reality test's fourth factor.  Zhong worked full-time for New Fortune during her tenure with the company, and she only left her job once she was fired.  (Tr. 22-23, 31-32, 34-35.)  *See Brock*, 840 F.2d at 1060-61 (citations omitted).

Finally, the fifth factor suggests that Zhong was an employee.  Zhong's work as a ticket seller/tour guide (Tr. 12-13, 20-21) was an integral part of New Fortune's business because the company's sole purpose was to run bus charters from New York to Atlantic City.

Considering the totality of the circumstances, Zhong was clearly New Fortune's employee and not an independent contractor.  As an employee, Zhong is entitled to be properly compensated under the FLSA and the NYLL.  *See* 29 U.S.C. § 206; N.Y. LAB. LAW § 652.

## II.   <u>Only New Fortune and Wang Were Zhong's Employers</u>

Zhong contends that New Fortune, Wang, Mo, Fu, Mao, and J&S were her employers within the meaning of the FLSA.

---

98), but the fact that she worked for New Fortune seven days a week shows that she did not have time to work elsewhere.

In the Second Circuit, at least two tests are used to determine who is an employer under the FLSA – the formal control test and the functional control test.  These tests "state no rigid rule for the identification of an FLSA employer.  To the contrary, . . . they provide 'a nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield v. N.Y.C. Health and Hosp. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008) (citation omitted).

The formal control test inquires into "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.* at 142-43 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  The functional control test is used "to assess whether an entity that lacked formal control nevertheless exercised functional control over a worker." *Id.* at 143 (citing *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003)).  Under this test, the Court considers:

> (1) whether [the putative employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [referral agency] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the putative employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [putative employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the putative employer].

*Id.* at 143 (quoting *Zheng*, 355 F.3d at 72).  A defendant need only be found to be an employer under one of these tests to be held liable.  *Id.* at 143 (citation omitted).  New Fortune and Wang were both Zhong's employers under the FLSA, while Mo, Fu, Mao, and J&S were not.

7

Considering the factors of the formal control test, New Fortune: (1) fired Zhong through Ms. Yao, a company employee (Tr. 34-35); (2) assigned Zhong's work schedule, provided Zhong with the company's rules and regulations, and mandated that Zhong fill out daily reports and seat assignments for the bus (Tr. 13-19, 24-28, 49; Pl. Exh. 1-3); (3) set Zhong's compensation (Tr. 35); and (4) maintained employment records, consisting of employee work schedules or name cards (Tr. 13). *See id.* at 142-43 (quoting *Carter*, 735 F.2d at 12).

Wang, as New Fortune's manager, was also Zhong's employer.[6]  (Tr. 71.)  Again considering the formal control test, Wang: (1) hired[7] and fired[8] Zhong (Tr. 12, 35, 40, 56); (2) gave Zhong her work schedule, instructed Zhong to call him or anyone in the office if she could not work, mandated that Zhong fill out daily reports, and set Zhong's employment duties (Tr. 13, 56-57, 60-61, 64-65; Pl. Exh. 2); (3) had the power to affect Zhong's compensation (Tr. 35); and (4) kept track of the ticket sellers'/tour guides' compensation through their daily summary employment records (Tr. 89). *See id.* (quoting *Carter*, 735 F.2d at 12).

Mo, Fu, Mao, and J&S were not Zhong's employers.  During the trial, there was no testimony that these people or entities undertook any activities that would make them employers under either the formal control test or the functional control test.  In fact, there was no testimony by either Zhong or Wang that these defendants had any substantive association with Zhong.  Mo

---

[6] Wang testified that he was the manager under New Fortune's two different owners.  (Tr. 72.)

[7] While Zhong testified that Wang hired her (Tr. 35, 40), Wang stated that he "did not hire her.  I agree [to let her sell tickets]."  (Tr. 56.)

[8] Zhong stated that when she was fired, Ms. Yao said that Wang knew Zhong was being fired.  (Tr. 35.)

owned New Fortune, most likely while Zhong was employed there, but there was no testimony

that he had any direct contact with Zhong.  (Tr. 70-71.)  Wang testified that his mother, Mao,

bought New Fortune in about 2009 or 2010, which means that Mao might not have even been

affiliated with New Fortune at the time Zhong worked for the company.  (*Id.*)  Moreover, Wang

stated that his mother was not actually involved with New Fortune.  (Tr. 72.)  In regards to J&S,

Zhong sold tickets for New Fortune, not J&S, and only a few of the buses she rode were provided

by J&S.  (Tr. 77.)  J&S clearly does not meet the formal control test, and at most only meets the

first prong of the functional control test since some of J&S' buses were used as equipment in

Zhong's work.  *See id.* (quoting *Carter*, 735 F.2d at 12; *Zheng*, 355 F.3d at 72).  *See also Jean-

Louis v. Metro. Cable Commc'n, Inc.*, 838 F. Supp. 2d 111, 132 (S.D.N.Y. 2011) (finding that

the first *Zheng* factor was *not* met where a company provided one piece of equipment because

"the fact that [the company] provides that lone piece of equipment is overwhelmingly

outweighed by what [the company] does not provide").  Finally, Fu, Wang's ex-wife, was the

100% owner of J&S, but she had no ownership or managerial interest in New Fortune.  (Tr. 73-

77.)  Because Zhong was employed by New Fortune and not J&S, Fu cannot be Zhong's

employer.

Accordingly, New Fortune and Wang are jointly and individually liable for Zhong's

unpaid compensation.  *Zheng*, 355 F.3d at 66 (citing 29 C.F.R. § 791.2) ("The regulations

promulgated under the FLSA expressly recognize that a worker may be employed by more than

one entity at the same time.").  "[A]ll joint employers are responsible, both individually and

jointly, for compliance with all of the applicable provisions" of the FLSA.  29 C.F.R. § 791.2(a).

**III.**   **Defendants Are Not Entitled to a Tip Credit**

Defendants contend that they are entitled to a tip credit for amounts Zhong received from their patrons.  Employers can pay tipped employees less than minimum wage if they give their employees notice that they are taking a tip credit.  29 U.S.C. § 203(m); *Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 228-29 (S.D.N.Y. 2002) (quoting 29 U.S.C. § 203(m)). *See also* N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.5(b).  Wang admitted to failing to tell Zhong that New Fortune was taking a tip credit (Tr. 89-90); thus, Defendants were not able to pay Zhong less than minimum wage based on the gratuities she collected from patrons.  *See* 29 U.S.C. § 203(m).

**IV.**   **Zhong Is Not Entitled to Compensation For All Hours She Was at The Tropicana**

An employee who is "engaged to wait" is "on duty" because his "periods of inactivity" are "unpredictable" and "usually of short duration."  29 C.F.R. § 785.15.  In contrast, an employee is "waiting to be engaged," or "off duty" during times when he "is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes."  29 C.F.R. § 785.16(a).

Whether an employee is on or off duty during his waiting time is a question of fact, which:

> involves scrutiny and construction of the agreements between the particular parties, appraisal of their practical construction of the working agreement by conduct, consideration of the nature of the service, and its relation to the waiting time, and all of the surrounding circumstances.  Facts may show that the employee was engaged to wait, or they way [*sic*] show that he waited to be engaged.

*Skidmore v. Swift & Co.*, 323 U.S. 134, 136-37 (1944) (citations omitted).  Furthermore, "[w]hether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case."  *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).

Here, Zhong was actively engaged in work as a ticket seller/tour guide[9] for only eight hours per day.  Zhong cannot be compensated for the majority of the time she was at the Tropicana, because she was "waiting to be engaged," or off duty.  With the exception of the first hour after she arrived at the Tropicana, Zhong was not obligated to assist New Fortune's patrons and was free to spend her time in Atlantic City for her own benefit, gambling, shopping, or engaging in other personal activities, until she had to board the bus for the return trip to New York.  (Tr. 57-58, 64.)  She was, therefore, off duty during that period.

## V.    Zhong Is Entitled to a Spread of Hours/Split Shift Premium

Under New York law, an employee is entitled to one additional hour of pay at the minimum wage rate, in addition to minimum wage, "for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."  N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.4.  The "spread of hours" is defined as "the interval between the beginning and end of an employee's workday.  The spread of hours for any day includes working time plus time off for meals plus intervals off duty."  *Id.* § 142-2.18.  "A split shift is a schedule of daily hours in which the working hours required or permitted are not consecutive.  No meal

---

[9] It is notable that during his testimony, Wang accidentally referred to people who held Zhong's job as tour guides.  (Tr. 86.)  This lends further support to the assertion that Zhong was a tour guide who deserved to be paid for more than just her one hour of selling tickets per day.

period of one hour or less shall be considered an interruption of consecutive hours."  *Id.* §

142-2.17.

Zhong qualifies for one additional hour of pay at the minimum wage rate for each day she

worked because her spread of hours always exceeded ten hours and she always worked a split

shift.  *See id.* § 142-2.4.  The time from the beginning to the end of Zhong's shift, including time

spent off duty, was about twelve to fourteen hours (Tr. 31-32), so Zhong's spread of hours

exceeded ten hours.  *See id.* § 142-2.18.  Moreover, she worked a split shift because her working

hours were not consecutive; Zhong concluded her first shift one hour after arriving to the

Tropicana, and she did not begin her next shift until she rode the bus back from the Tropicana to

New York.  (Tr. 13-14, 20-21.)  *See id.* § 142-2.17.


## VI.   Zhong Is Not Entitled to Overtime Compensation

To receive overtime compensation, an employee must work over forty hours in one week.

29 U.S.C. § 207(a)(1).  *See also* N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.  Zhong only

worked eight hours per day, five days per week – forty hours per week;[10] therefore, she is not

entitled to overtime compensation.

---

[10] Further, Zhong's extra hour of pay per day as a spread of hours/split shift premium does
not count towards calculating overtime.  *See id.* § 146-1.6(c) (In an analogous provision related
to hospitality workers, the rules describe that "[t]he additional hour of pay [for a spread of hours]
is not a payment for time worked or work performed and need not be included in the regular rate
for the purpose of calculating overtime pay.").

VII.   <u>**Zhong Is Entitled to Liquidated Damages**</u>

Under the FLSA and NYLL, a plaintiff who demonstrates that she was improperly denied minimum wages and/or spread of hours payments may recover, in addition to reimbursement of unpaid wages, "liquidated damages," unless the employer demonstrates that it acted in good faith and had reasonable grounds for believing that it had not violated the FLSA or the NYLL.  29 U.S.C. §§ 216(b), 260; N.Y. LAB. LAW §§ 198(1-a), 663(1); *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK) (JCF), 2011 WL 2022644, at *7 (S.D.N.Y. May 2, 2011), *adopted by*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011) (recommending award of liquidated damages on spread-of-hours premium).  As the Second Circuit has observed, "the employer bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness.  The burden, under 29 U.S.C. § 260, is a difficult one to meet, however, and double damages are the norm, single damages the exception."  *Reich v. Southern New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (citations and internal quotation marks omitted); *accord Barfield*, 537 F.3d at 150 (citations omitted).  Defendants have failed to demonstrate that in not paying Zhong a minimum wage, they acted in good faith and reasonably believed that their actions were lawful.  (Tr. at 69-70.)  *See, e.g.*, *Barfield*, 537 F.3d at 150 (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)) (internal quotation marks omitted) ("To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them.")  Accordingly, Zhong is entitled to liquidated damages.

**VIII.   Zhong is Entitled to Pre-Judgment Interest**

Zhong seeks pre-judgment interest on her unpaid wage claims.  Her receipt of a liquidated

damages award under federal law limits her recovery of pre-judgment interest on her minimum

wage claims because it is well-established that the FLSA prohibits a plaintiff from recovering

pre-judgment interest for FLSA violations for which the plaintiff also received liquidated

damages.  *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (citing *Brock*, 840 F.2d

at 1064).  Zhong can, however, recover both liquidated damages and pre-judgment interest for

her NYLL spread of hours/split shift claims because they are not also compensated under the

FLSA.  *Id.* (Plaintiff is "entitled to an award of prejudgment interest only on unpaid wages and

spread of hours pay for which liquidated damages pursuant to the FLSA were not assessed.")


**CALCULATION OF DAMAGES**

**I.   Zhong's Unpaid Minimum Wages**

Employees are entitled to be paid the higher of the minimum wage under the FLSA or the

NYLL.  When Zhong began working for New Fortune and Wang on April 3, 2009, minimum

wage under the NYLL was $7.15 per hour, but it was only $6.55 under the FLSA.  N.Y. LAB.

LAW § 652(1); 29 U.S.C. § 206(a)(1)(B).  As of July 25, 2009, the minimum wage was $7.25 per

hour pursuant to both the FLSA and the NYLL.  N.Y. LAB. LAW § 652(1); 29 U.S.C. §

206(a)(1)(C).

As described, Zhong worked eight hours a day, five days a week.  Zhong therefore

worked forty hours a week, for which she was entitled minimum wage.  Zhong is entitled to the

following compensation.  Zhong began work on Friday, April 3, 2009; she is entitled to $57.20

14

for her eight hours of work at $7.15 per hour that day.  For the sixteen weeks in which minimum

wage was $7.15 per hour, Zhong is entitled to $286.00 per week.  Thus, Zhong is due $4,576.00

in total compensation for those sixteen weeks.  For the thirteen weeks in which minimum wage

was $7.25 per week, Zhong is entitled to $290.00 per week.  Zhong is therefore due $3,770.00 in

total for those thirteen weeks.  Zhong ended work on Monday, October 26, 2009; she is entitled

to $58.00 for her eight hours of work at $7.25 per hour that day.  In total, Zhong is due $8,461.20

in compensation for her work.  Zhong was paid $40 per day (Tr. 35, 55-56) and worked for 147

days during her employment period (*See* Tr. 12, 55), so she was paid $5,880.00.  Therefore, after

reducing her required wages by the $5,880.00 she was already paid, Zhong is due $2,581.20 in

unpaid minimum wages.[11]


## II.   Zhong's Unpaid Spread of Hours/Split Shift Premiums

Zhong is entitled to one additional hour of pay at the minimum wage rate for each day she

worked: $7.15 for each of the eighty-one days she worked from April 3, 2009 until July 24, 2009,

which totals $579.15; and $7.25 for each of the sixty-six days she worked from July 25, 2009 to

October 26, 2009, which totals $478.50.  Therefore, Zhong is owed a total of $1,057.65 in unpaid

spread of hours/split shift premiums.

---

[11]  It bears mentioning that the $22 voucher card Zhong received daily to spend at the
Tropicana (Tr. 33-34, 50, 56) is not part of her wages.  *See Levion v. Societe Generale*, 822 F.
Supp. 2d 390, 403 (S.D.N.Y. 2011) (quoting N.Y. LAB. LAW § 190(1)) (finding that a bonus is
not considered to be "wages" under the NYLL, which defines wages as payment for "labor or
services rendered").  The voucher card cannot constitute wages because whether Zhong received
the card depended on New Fortune's casino package with the Tropicana (*See* Tr. 95-96), which
was outside Zhong's control and actual work.  *See id.* at 403-04 (citations omitted) (holding that
incentive compensation is not wages when its payment is dependent on factors outside the
employee's control and actual work).

III.   **Liquidated Damages**

Zhong is entitled to liquidated damages of 125% of the amount of her unpaid minimum

wages, *see* 29 U.S.C. § 216(b); N.Y. LAB. LAW § 198(1-a), or $3,226.50.  Zhong is entitled to

liquidated damages on her spread of hours/split shift damages in the amount of 25%, N.Y. LAB.

LAW § 198(1-a), or $264.41.  The total amount of Zhong's liquidated damages is $3,490.91.


IV.   **Pre-Judgment Interest**

Zhong is entitled under New York law to pre-judgment interest at the statutory rate of

nine percent per year.  *See* N.Y. C.P.L.R. §§ 5001, 5004.  Pre-judgment interest applies only to

the amount of compensatory damages; it excludes the amount of liquidated damages.  *See, e.g.*,

*Heng Chan v. Sung Yue Tung Corp.*, No. 03-CV-6048 (GEL), 2007 WL 1373118, at *9

(S.D.N.Y. May 8, 2007).  Where unpaid wages "were incurred at various times, interest shall be

computed upon each item from the date it was incurred or upon all of the damages from a single

reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b).  Simple pre-judgment interest is

calculated from a singular, midpoint date.  *See, e.g.*, *Blue v. Finest Guard Servs.*, No. 09-CV-133

(ARR) (CLP), 2010 WL 2927398, at *12 (E.D.N.Y. June 24, 2010) (citations omitted), *adopted

by*, 2010 WL 2927403 (E.D.N.Y. July 19, 2010) (calculating interest using simple rate, not

compounded rate). Simple pre-judgment interest is calculated by multiplying the principal by the

interest rate by the time period–from a singular, midpoint date–up until and including the date

judgment is entered.  *See id.*

July 16, 2009 is the approximate midpoint between Zhong's start date of April 3, 2009

and her end date of October 26, 2009.  As noted above, the principal amount she is owed in

16

spread of hours/split shift compensation is $1,057.65.  Therefore, a nine percent annual interest rate on $1,057.65 should be applied from July 16, 2009 through the date judgment is entered.


### CONCLUSION

Based on all of the foregoing, I find that New Fortune and Wang are jointly and individually liable to Zhong in the amount of $2,581.20 in unpaid wages, $1,057.65 in unpaid spread of hours/split shift premiums, liquidated damages in the amount of $3,490.91, and pre-judgment interest as determined by the Clerk of the Court pursuant to this order.

Zhong's counsel is hereby ordered to file a motion for attorney's fees not later than July 25, 2012.  Opposition thereto is due on August 1, 2012.  There will be no reply.  Final judgment will be entered after a determination on the amount, if any, of attorney's fees.


Dated: July 18, 2012
        Brooklyn, New York


*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**